## SMITHA ET AL. vs. FLOURNOY'S ADM'R.

[PETITION TO SET ASIDE SALE OF DECEDENT'S LANDS UNDER ORDER OF PROBATE COURT.

1. *Sale of decedent's real estate by order of probate court; jurisdiction of court, and validity of proceedings.*—The case of *Satcher v. Satcher's Adm'r*, (41 Ala. 26,) which this court approves and adheres to, decides that, under the act of February 7, 1854, as under the former statutes, the jurisdiction of the probate court, to order a sale of the lands of a deceased person, attaches on the filing of a petition by the administrator, alleging that a sale is necessary, either for the payment of debts, or for equitable division among the heirs; and that when the jurisdiction of the court has thus attached, mere errors and irregularities in the proceedings do not render the order of sale, or the sale, absolutely void.

2. *Same; sufficiency of petition in description of lands.*—Although the statute requires that the application for the sale "must describe the lands accurately," (Revised Code, § 2222,) and although the lands

must, in point of fact, be situated in the county ; yet an imperfect description of them in the petition, which is true so far as it goes, and which may have been amended in the probate court, or perfected by the aid of facts judicially known to the courts, is not fatal to the validity of the proceedings.

3. *Judicial notice of cities, incorporated towns, post-offices, and public lands.*—The probate court of Barbour county may take judicial notice of the facts, that Eufaula is an incorporated city in said county ; that it is a railroad terminus, and the location of a post-office, the only one by that name in the State ; also, the boundaries of the county, and the numbers of the lands within its limits, as described in the records of the land-office of the United States.

4. *Who may file petition to set aside sale.*—An administrator *de bonis non* may make application to the probate court to set aside an order of sale and sale of lands belonging to his intestate's estate, which were made on the application of the administrator in chief for the purpose of equitable division among the heirs-at-law.

APPEAL from the Probate Court of Barbour.
Heard before the Hon. H. C. RUSSELL.

THE facts of this case are thus stated in the opinion of the court, as delivered by Mr. Justice PETERS.

" The facts upon which this cause was determined in the court below, are briefly these : On the 7th day of October, 1859, the personal representatives of the estate of Thomas Flournoy, deceased, filed their application in the court of probate of Barbour county, in this State, for an order of sale of the real and personal property of said deceased for the *payment of his debts.* The allegations of the petition are sufficiently formal, except it does not appear that there is any positive averment that the lands mentioned in the petition are situated in the county of Barbour, or in the State of Alabama. Otherwise, they are accurately described by the land-office designations usual in the public surveys of lands in this State. Evidence was taken in support of this application, in conformity with the statute ; and the cause was heard on the 10th day of December, 1859, when the court of probate made a decree in conformity with the prayer of the petition, ordering the sale of said lands for *distribution.* This sale was ordered to be made ' on the premises, or in Eufaula.' The lands were sold, and reported to the court ; the sales confirmed, and

titles ordered to be made to the several purchasers. Afterwards, on the 27th day of August, in 1870, O. R. Flournoy, as administrator *de bonis non* of the estate of Thomas Flournoy, deceased, filed his petition in writing in the court of probate of said county of Barbour, praying that the order of sale of said lands made by said court of probate on the 10th day of December, 1859, and said sales made under authority of the same, be declared void, and set aside. On the hearing of said last named petition, the prayer of the same was granted, and said sales were declared void, and set aside. From this order the appellants bring the case to this court by appeal, and here assign for error the order of the court below declaring said order for said sales to be void, and that said O. R. Flournoy, as administrator *de bonis non* as aforesaid, had no right to make said application to set aside said sales and said order for the same."

Jas. L. Pugh, and S. H. Dent, for appellant, argued the case orally at the bar, and submitted written arguments, which have never come to the hands of the Reporter; and an "additional brief," which was printed, and from which the following points are condensed, was afterwards submitted by Mr. Pugh.

The law in this State is certainly settled, that when a petition to sell a decedent's lands is filed in the probate court, by an administrator, alleging that a sale is necessary for the payment of debts, or for distribution, the jurisdiction of the court attaches to the *rem*, if it is shown to be within the State; and if minors are interested, the jurisdiction of the court to order the sale depends on proof by deposition, taken by the probate court, showing the necessity for a sale.

1. Does it sufficiently appear in this case that the lands are in Barbour county, Alabama? "Allegations of import equivalent to those required by the statute, will sustain jurisdiction; and in determining whether the allegations are of equivalent import, the court should select the signification of words favoring the validity of the order."—*Satcher*

v. Satcher, 41 Ala. 40; King v. Kent, 27 Ala. 542. The petition for the sale shows that the lands were city lots in Eufaula, described by streets, blocks, and numbers; and other lands, described as sections, quarter-sections, &c., by numbers; and the proceedings had under the petition show that all the lands are situated in Alabama. This court judicially knows, and said probate court was bound to know judicially, that Eufaula is an incorporated city in this State, situated in Barbour county; that city lots "in Eufaula" are in Barbour county; that "section thirty-two," or "section thirty-three," or any other subdivision of lands which once belonged to the United States, and which are embraced in the public records and maps in the land-office at Washington, are located in the county in which they are in fact situated. Moreover, as matter of fact, the lands in controversy are in Barbour county, and are so alleged to be, both in the petition to set aside the sale, and in the decree setting it aside. If a demurrer had been interposed to the petition for the sale, on account of the imperfect description of the lands, the defect might have been amended. If a plea had been interposed to the jurisdiction of the court, on the ground that the lands were not in the county, it could not have been sustained.

2. The petition alleged a necessity to sell for the payment of debts, while the other proceedings in the case, with the proof and decree, are based on a necessity to sell for the purpose of equitable division; and the decree itself recites that the petition also went on that ground. "The proceedings on which the action of the probate court is founded, are usually kept on separate papers, which are often mislaid or lost."—Florentine v. Barton, 2 Wallace, 216. The petition copied in the transcript, which was filed to pay debts, might have been amended, so as to allege that the necessity to sell was for distribution; and in order to uphold the validity of the order and sale, this court will indulge the presumption, that the recitals in the order are true; that the original petition must have been amended, and the amendment lost or mislaid.—Moseley v. McGuire, 45 Ala. 621. It is important to observe the distinction

between recitals which initiate jurisdiction, and recitals to support, or prevent the failure of jurisdiction, which has already attached. Facts necessary to initiate jurisdiction, must be alleged by the pleader, when he invokes jurisdictional power, or calls jurisdiction into exercise; but facts which the court is charged by law with the duty of ascertaining, in order that its initiated jurisdiction may not be defeated, are conclusively established by recitals in orders, decrees, or judgments of the court. In the first case, the recitals are not judicial; in the second case, they are.

3. The most important question in the case is, whether there was a *substantial* compliance with the requirements of the 5th section of the act of 1854, which makes the authority of the court to order a sale depend upon proof of the necessity to sell, where minors are interested. The attention of the court is particularly invited to the consideration of this question, as there is speculative litigation now pending in Barbour county, and in the city of Eufaula, involving property to the amount of probably half a million of dollars, which has been induced by the opinion of Judge PETERS, or some expressions in it, in the case of *Strickland v. Hodge et al.*

By whom is the proof required to be taken? By the probate court. How must it be taken? By "depositions as in chancery proceedings." Why taken by the probate court? Because the necessity to sell must be shown to that court by that proof; because the duty of taking the proof, and of passing judgment on it, is expressly enjoined on that court by the law. In the discharge of this duty in this case, the probate court appointed a commissioner, and issued to him a commission, which authorized him to take the answers of the witnesses, under oath, to the written interrogatories which were annexed to the commission. The commissioner certified, that he took the depositions of the said witnesses, under the said commission, "on oath." The probate court accepted, and passed its judgment on the proof so taken; and held that the proof was taken "as in chancery proceedings," and that it showed to the court the necessity for the sale. This proof was taken un-

der the authority, and by the sanction, of the court whose duty it was to take and act upon it; it was taken under oath, legally administered, and in a judicial proceeding, and was pertinent to a material issue in that proceeding; and it would have been perjury, if knowingly and corruptly false. It is in the shape of written depositions to written interrogatories, all of which appear in the record and proceedings of the probate court, in support of the recitals of the judge himself in his judicial order. Are these proceedings absolutely void, because the record does not show that the interrogatories were filed ten days before the commission was issued, nor served on the guardian *ad litem* for that length of time, as required by the rule of chancery practice? In other words, the question is squarely presented, are answers of witnesses, under oath legally administered by an authorized commissioner, and by him certified to have been so taken, in answer to written interrogatories filed with the judge, and by him annexed to the commission which he issued, and the action of the probate court thereon, ratifying the action of the commissioner, and adjudging the proof to have been taken as in chancery proceedings, and to show the necessity for the sale,—are these proceedings a substantial compliance with the requirements of the 5th section of said act of 1854?

The case of *Satcher v. Satcher*, 41 Ala. 26, is the first, and the only well-considered judicial construction of the said act of 1854. The author of this brief was of counsel for the appellees in that case, and he well knows its history from the judge who delivered the opinion. The case was held under advisement for a long time, and the opinion of Chief-Justice WALKER, which was finally delivered as the opinion of the court, was written as a dissenting opinion; the other two judges holding, that the word "act," as used in the 5th section, meant literally the whole act, and made the jurisdiction of the court depend upon a compliance with all the requirements of the five sections contained in said act. The case of *Johnson v. Johnson*, (40 Ala. 247,) was decided by the same judges who decided *Satcher v. Satcher ;* and in that case, as in the late case, two of the

judges favored the construction of the act of 1854 above mentioned, but, knowing the mischief which would be produced by such a construction, plainly announced, they purposely left the matter in such uncertainty as to be able to escape upon more mature deliberation. Hence the remark of Chief-Justice WALKER, in *Satcher v. Satcher*, that "the decision in *Johnson v. Pynes*" (or *Johnson*) "could be sustained, *without disturbing any principle settled in Satcher v. Satcher.*" The case of *Johnson v. Johnson*, then, must not be considered as an authoritative exposition of the statute of 1854. But, even if it were so considered, the record in that case shows that there was no commissioner, and no witness sworn; and further, that the petition was to sell 'a house and lot in Woodville, Henry county,' which means, of course, any house and lot in said town; and, of course, the jurisdiction of the court never attached, as to any particular house and lot. The case of *Johnson v. Johnson*, therefore, is not to be considered as conflicting with the case of *Satcher v. Satcher*.

"The jurisdiction of the probate court appearing on the petition, the same presumption of law arises, that it was rightly exercised, as prevails with reference to the action of a court of superior and general authority."—*Comstock v. Crawford*, 3 Wallace, 396. "The evidence of the necessity to sell was to be determined by the order of the court, and the order of sale declares that it was made to appear. This necessity was the jurisdictional fact. If a court of limited jurisdiction is charged with the ascertainment of jurisdictional facts, and its proceedings show that these facts were ascertained, they can not be denied; because making the jurisdiction of the court depend upon a preliminary fact, implies authority to ascertain that fact." *Reynolds v. Kirkland*, 44 Ala. 312; citing *Wyatt's Adm'r v. Rambo*, 29 Ala. 510.

The case of *Satcher v. Satcher*, which has been cited approvingly by this court in five subsequent decisions, conclusively settles, upon irresistible reasoning and authority,—1st, that a proceeding in the probate court, to sell the lands of a decedent, is *in rem*; 2d, that the jurisdiction of

the court attaches, when a petition is filed alleging a statutory ground of necessity to sell; 3d, that a compliance with all the requirements contained in the five sections of the act of 1854 is not necessary to the validity of an order of sale and sale; 4th, that nothing required by the first four sections of that act is jurisdictional, or necessary to sustain jurisdiction; 5th, that the said act makes no change, "which affects the decisions of this court, as to what is necessary to sustain the jurisdiction of the probate court to order the sale of lands of decedents"; that "those decisions are eminently rules of property, and ought not now to be disturbed"; 6th, that the validity of an order to sell, in such case, "can never depend upon the fact that the court has acquired jurisdiction of the persons of the parties"; and that to hold otherwise would upset the distinction between proceedings *in rem* and proceedings *in personam*, and antagonize rules of jurisdiction universally recognized.

The distinction between proceedings *in rem*, and proceedings *in personam*, is well stated by Chief-Justice MARSHALL, in *Rose v. Hinely*, 4 Cranch, 277 ; see, also, 2 Wallace, 216.

WATTS & TROY, *contra*.—1. The main question arising is, whether the probate court, in 1859, acquired jurisdiction by the petition filed on the 7th October, 1859, to order a sale of the lands asked to be sold. We say that the allegations of said petition did not give the court jurisdiction to act in the premises, and that the administrator *de bonis non* had the right to ask, by petition, that the alleged void order of sale should be set aside. Whenever any court renders a decree or judgment, which it has no *jurisdiction* to render, such void decree or judgment may be set aside at any time; and it is proper that it should be set aside by the court on motion of any person having an interest. See *Johnson v. Johnson*, 40 Ala. 247; *Summersett v. Summersett*, 40 Ala. 596.

2. The courts of probate, under the old constitution and laws, were courts of *statutory*, *limited*, and *special* jurisdic-

tion, and especially as to their powers over the real estate of an intestate. The statutes gave them jurisdiction to exercise the power of ordering sales of real property, on application in writing for that purpose, setting forth the facts on which the court has the right to act.—Rev. Code, §§ 2221–2. If the court were to make an order of sale of lands belonging to an intestate, without such written application, the sale would be void. And so, if any one of the facts required to be set forth in such application to authorize the court to act, be omitted in the application or petition, the order of sale based on such defective application or petition, would be equally void. It is clear that the court can not acquire jurisdiction to act, until the jurisdictional facts are shown in the application. The application containing such facts is the very ground-work of the jurisdiction of the court.—*Wightman v. Karsner*, 20 Ala. 457 ; *Com'rs Court of Russell v. Tarver*, 25 Ala. 480 ; *Lamar v. Com'rs Court*, 21 Ala. 772 ; *King v. Kent*, 29 Ala. 552 ; *Wyatt v. Rambo*, 29 Ala. 510 ; *Matheson v. Hearin*, 29 Ala. 210; *Pettit v. Pettit*, 32 Ala. 304 ; *Com'rs Court v. Bowie*, 34 Ala. 463 ; *Hall v. Chapman*, 35 Ala. 557–8.

The jurisdiction of the court must appear affirmatively, either in the petition or application, or certainly in the order taking jurisdiction on the petition; and facts outside the petition, or the judgment entry made on the petition, can not give jurisdiction.—See, especially, *Howell v. Gunn*, 27 Ala. 663 ; *Douthit v. Mathews*, 27 Ala. 272 ; *Wyatt v. Rambo*, 29 Ala. 510. This last decision is a review of all the authorities in Alabama, and it overrides and annuls the decision in *Wyatt v. Steele*, and it holds that there can be no intendment, or presumption, in favor of the jurisdiction of such a court, in the exercise of power to sell lands belonging to an intestate's estate.

Upon the death of an intestate, his lands descend to his heirs; and the title of the heirs must there remain, until it is clearly shown that such title has been divested out of them. The probate court can not, without the consent of the heirs, divest such title, unless it is clearly shown that some one of the grounds, on which the statutes authorize

the court to act, exists. And this ground must be affirmatively shown to exist on the record. The record here meant is that which properly belongs to the record of such case, to-wit, the petition or application, and the judgment of the court on that petition or application. No presumption can be indulged against the owners of the title to the property ordered to be sold, for the purpose of sustaining the decree of such court. The presumption is, and must be, in favor of the owners of the property, viz., the heirs, until it is made clearly to appear that some power is authorized to divest, and has, under such authority, divested legally, the rights of the owners of the property. Especially is this the case when the owners of the property are minors.

5. The probate court never could acquire jurisdiction over these lands, until the petition showed the jurisdictional facts Now, the first jurisdictional fact to be shown is, that the lands asked to be sold were within the jurisdiction of the court; 2d, that the lands sought to be sold were the property of the estate of the deceased at the time of his death, i. e., that he died seized and possessed of them; and, 3d, that some one of the grounds on which the probate court is authorized to act by statute, exists; i. e., either that the lands could not be equitably divided amongst the heirs of the intestate without a sale, or that a sale is necessary for the payment of the debts of the intestate? Unless these facts all appear in the petition, the court can never take the first step to order a sale. That the first must be shown, see Kent v. King, 29 Ala. 542; Com'rs Court of Russell v. Tarver, 25 Ala. 480; Collins v. Johnson, 45 Ala. 548, opinion by Justice PETERS. That the second fact must be shown, see Pettit v. Pettit, 32 Ala. 288. It is unnecessary to cite authorities to support the third point.

Now, it does not appear by the petition, or in the judgment or order of the court granting the sale, that the lands lie in Alabama. This fact must appear, either in the petition for the order, or in the order of sale. It appears in neither. Nor does it appear by the allegations of the pe-

Smitha et al. v. Flournoy's Adm'r.

tition, that the intestate died seized and possessed of the lands ordered to be sold. The language used is, that "the following comprises the whole of the personal as well as the real estate of said Flournoy," viz: (Here follows a list of personal property and lands.) Now, we submit, that this language is not sufficient to show that the intestate died seized and possessed of the real estate, or of such interest therein as could be sold.—*Pettit v. Pettit, supra.*

4. But we say that this sale was void, because there never was any petition filed setting forth that the lands could not be equitably divided amongst the heirs of the estate.

The only petition which appears in the record is the one filed 7th October, 1859, which alleges that a sale of both personal and real estate is necessary to pay the debts of the intestate. Was there any other petition ever filed? We say there never was. Was this one amended? The counsel for appellants say that it was. We deny this. These questions must be settled by the record.

Now, if the court will look at the order of sale, it will be seen that the judge, in reciting that a petition was filed, states that it was filed on the 7th of October, 1859, and that it was so entered on the minutes of the court on that day, viz., the 7th of October, 1859. Now, this language excludes the idea that any petition but one was filed. We see the one filed on that day, and that sets forth the ground for the sale, that a sale of both personal and real estate was necessary for the payment of debts of the intestate. This language in the judgment entry of the order of sale, also excludes the idea that any amendment of the petition filed the 7th of October was made. The record nowhere shows, or alludes to, any amendment of the petition filed on the 7th of October, 1859. In the absence of any statement of record that an amendment was asked for, or made to the petition so filed, and in the absence of any allusion, in any part of the record, to an amendment of that petition, it must be held that none was made. What then? That the judge of probate, (in the order of sale, when reciting what had been done, stating that the petition had

been filed on the 7th of October, 1859, and that an entry on the minutes was made that day,) when he states in this order the purpose of filing the petition, misstated it. He refers to the petition filed on the 7th of October, 1859, and states that an entry was made on the minutes on that day of the filing of such petition, and then he proceeds to state the purpose of said petition, viz., "praying an order of sale of the same for the purpose of division among the heirs of said estate."

5. Again : even if we could conclude that there was another petition filed, (although no mention of such thing is made in any part of the record,) that petition is not in the record. How are we to ascertain what was in that petition? By the judgment entry ordering the sale. If we look to it, we see that the court has no jurisdiction, because no such ground is there stated as authorizes the judge to take jurisdiction. The only language used in this entry is, that the administrators had filed a petition on the 7th of October, 1859, "praying an order of sale of same, for the purpose of division among the heirs of said estate." Now, if this was the language of the petition, it is clearly not sufficient to give the court jurisdiction. It does not allege that "the lands can not be equitably divided amongst the heirs or devisees." Unless these, or equivalent words, are inserted in the petition, the court does not acquire jurisdiction.—*Wyatt v. Rambo*, 29 Ala. 510; *Satcher v. Satcher*, 41 Ala. 26. But we say that there was no petition alleging that the lands could not be equitably divided amongst the heirs or devisees ; and the order of the judge of probate being thus shown to be made without any petition alleging such jurisdictional fact, the sale is void.—*Wyatt v. Rambo, supra.*

6. There was no proof taken as in chancery cases, that the ground of the petition actually filed was true—the one alleging that a sale was necessary to pay debts, and showing the necessity of the sale ; and the sale was void for this reason.—Code, § 2225 ; *Strickland v. Hodge et al.*, decided at the January Term, 1871, which is directly in point.

We contend that, since the statute of 1854, (the 5th section thereof,) which is incorporated into the Code as section 2225, the sale is void, unless everything required by that section is shown by the record to have been done. And so it is held in *Strickland v. Hodge et al., supra.* In *Fields' Adm'rs v. Goldsby,* (28 Ala. ——,) it is held that the worst of such matters would be held as mere irregularities, not affecting the validity of the sale in a collateral attack. But this case was under the old law. And this statute was intended to protect the rights of minors, married women, persons *non compos,* &c. And hence a different rule must now be held, as was rightly done in *Stricklen v. Hodge et al., supra.* This was the only point really decided in *Strickland v. Hodge.*

The consequence of this must be that the sale of the lands was ordered by the judge without any petition asking for a sale of the lands on the ground on which proof was taken. The witnesses were not examined to establish the ground stated in the petition, and do not prove the ground stated in the petition. The necessity for the sale is, therefore, not shown by the deposition of witnesses, as in chancery cases. The record shows that there were both minors and married women; so that the section of the Code quoted is strictly applicable, and it declares that every order of sale, and sale made not conforming to its provisions, is void, and not merely voidable. It may be that, under the old law, a mere failure to take depositions as in chancery cases, showing the necessity of the sale alleged in the petition, would be a mere irregularity, not rendering the order of sale and the sale void; but to hold so, after this statute was passed, would be to disregard and ignore the positive injunctions of the statute.

Again : if we are right in the construction of the record, the case stands as if the judge of probate had, of his own motion, without petition in writing, had testimony taken and ordered a sale on that testimony. Such sale would, under all the authorities, be void.

7. It is nowhere shown in the record, that the interrogatories were filed, and a service on the parties for ten days

before the commission issued.    There are no cross-inter-
rogatories, and no notice appears ever to have been given.
the heirs of the intestate, and there is no waiver of such
notice.

8. The heirs of the intestate were never notified, in any
way, that the lands were asked to be sold for an equitable
division amongst them.    They were notified that a sale
would be applied for for the purpose of paying the debts
of the intestate.

Can the rights of the heirs of the intestate to the lands,
the title of which had descended to them, be taken away
without any notice whatever?    Such action must be held
wholly void under every system of law.—*McCurry v.
Hooper*, 12 Ala. 823 ; *Summersett v. Summersett*, 40 Ala.
596.    The contest of which the heirs were notified never
took place, and they have never had any day in court as to
the order of sale which was made, by the judge of pro-
bate, without any petition asking for a sale, on the ground
on which he made the order of sale.

9. The statute requires that the judge of probate, when
he makes an order of sale of lands belonging to an intest-
ate, shall designate in his order the place of sale.—Rev.
Code, § 2090.    In *Brown v. Brown*, (41 Ala. 215,) this sec-
tion is construed, and it is there held that an order of sale,
which did not designate the place of sale, was void.    " No
power exists in the administrators to select the place ; con-
sequently no legal sale can be made under the decree."
It is true that *Brown v. Brown* was decided on appeal from
the order ; but the above language could not have been
used unless the court held the order of sale void.    The
order of sale in this case leaves it discretionary in the ad-
ministrators to sell at one of two places named.

The following cases show clearly that the administrator
*de bonis non*, if the sale is void, as we contend, has the
right to make the motion.—See *Swink's Adm'r v. Snod-
grass*, 17 Ala. 656 ; *Samson's Adm'r v. Say's Ex'r*, 24 Ala.
184.    The administrator *de bonis non* has as much power
over the estate which has not been administered, as the
administrator in chief.    It will certainly not be disputed

that the administrator in chief has the right to sue for real estate belonging to his intestate, because his is a paramount right (at law) to that of the heirs, whenever it is necessary to pay debts or whenever it is necessary to sell for an equitable distribution.—*Patton v. Crow*, 26 Ala. 426. If the order of sale and the sale thereunder were void, as we contend, it is as though no order of sale and sale had ever been made. The action of the probate court was a mere nullity.—*Summersett v. Summersett*, 40 Ala., *supra*. And if so, then the only question would be, whether an administrator *de bonis non* has not the right to petition the probate court for an order of sale of lands on either of the grounds stated in the statute. It needs no further argument to show this. The administrator *de bonis non* has, then, such an interest as authorized him to make this motion.

But there was no such objection as this made in the court below.

11. The record in this case shows no exception to the action of the court in setting aside the sale.

PETERS, J.—This proceeding involves but one question of importance. That is this : Are the allegations of the petition for the order of sale for said lands sufficient to give the court of probate jurisdiction in the case made in the application; or, in other words, does the petition make any case at all ?

This must depend on the construction of the statute under authority of which the proceedings in the court of probate were conducted. This statute is the Code of Alabama, as amended and altered by the act of the general assembly of this State, entitled "An act to regulate the sale of real and personal property by executors and administrators," approved February 7, 1854.—Pamph. Acts, 1853-54, Act No. 58, p. 55.

This important act has been carefully examined by this court, and construed ; and the result of this construction is, that "mere errors and irregularities in the proceedings do not render void the order of sale."—*Satcher v. Satcher's*

*Adm'r*, 41 Ala. 26. Such constructions enter into the law itself, and form a part of the title of such estates as depend upon it; and it is of the highest importance that they be adhered to, at least so far as those estates are concerned, which have grown up under the statute so construed. The construction, in this way, necessarily becomes a part of the law, and the law is a part of the judgment of the court.—Ram. on Leg. Judg., 2 *et seq.* ; *Gelpcke v. The City of Dubuque*, 1 Wall. 175; *The Ohio Life and Trust Co. v. Debolt*, 16 How. 432.

The above mentioned statute enacts, " That no application for the sale, for any purpose, of the lands of deceased persons, shall be acted upon by any judge of probate, unless such application shall conform to the requirements of section 1868 of the Code."—Pamph. Acts, 1853–54, p. 55, § 2. The section of the Code thus referred to is in these words : "The application for that purpose must be made by the executor or administrator ; must describe the lands accurately ; and give the names of the heirs or devisees, and their places of residence ; and such application must also state, if any, and which, of such heirs or devisees are under the age of twenty-one years, or married women, or of unsound mind."—Code of Alabama, § 1868; Rev. Code, § 2222. The court must also be entitled, in fact, to take jurisdiction of the persons and the thing, which are to be affected by its judgment, before its proceedings can have validity. Without this, the judgment is void.— *Williamson v. Berry*, 8 How. 495, 541, *et seq.*

Here, the application to declare the order of sale void, and to set aside the sale, shows that the lands were, in fact, within the jurisdiction of the court. But it is contended that the court of probate, being one of special jurisdiction, the averments of the application must show this fact. This is not, however, the language of the law above quoted. It requires that the lands shall " be accurately described." Jurisdiction is a fact that may be put in issue by a plea. If the right to take jurisdiction in fact exists, then such a plea would be of no avail. It could not be sustained. The application in this case avers all the facts

required by the Code, and the description of the lands, if not perfectly accurate, is accurate as far as it goes. It would be sufficient in a deed, and possibly in a will. *Hawkins v. Hudson,* 45 Ala. 482. Such a description is sufficient to bring the subject within the jurisdiction of the court. The description may have been corrected and made perfect. It entitled the court to proceed. This was all that was needed to give validity to its judgment, when the proper parties had notice.—*Comstock v. Crawford,* 3 Wall. 396 ; *Satcher v. Satcher's Adm'r,* 41 Ala. 26, *supra,* and cases there cited ; *Grignon v. Astor,* 2 How. 319, 338.

But, besides this, the court of probate may judicially take notice that "Eufaula" is an incorporated city in the county of Barbour, in this State ; that it is a railroad terminus, and the location of a post-office, and that there is but one post-office so named in this State ; and consequently that lots situated in said city of Eufaula are in the county of Barbour, and in the State of Alabama.—Pamph. Acts, 1855–56, p. 224, No. 278 ; Pamph. Acts, 1869–70, p. 186, No. 183 ; Pamph. Acts, 1832, act Dec. 18, 1832 ; 1 Greenl. Ev. § 6. It may also judicially know the boundaries of said county, and that said county includes lands coming within the land-office description of the lands mentioned in the petition for the sale. This, although very irregular, and very careless, is sufficient to sustain the jurisdiction of the court.

The courts of the State exercise one branch of the sovereign power of its government, and their authority to act is called their jurisdiction.—Const. Ala. 1867, Art. III, § 1 ; Art. VI, § 1 ; Const. Ala. 1819, Art. II, § 1 ; Art. V, § 1 ; Rev. Code, §§ 660, 698, 746, 790. This is but an agency appointed by the people for the common good. And such irregularities as might have been objected to in the progress of the proceedings in the court below, and corrected there, should not be allowed to be interposed to render the action of the court itself nugatory and injurious, and to deceive and betray all who have necessarily been required to rely upon the instrumentality of the court. I, there-

24

fore, feel strongly urged to repel such constructions of the important law above quoted, as shall force the court to defeat its own judgments, when, of right, the jurisdiction was clearly justified by the facts. Here, the lands sold brought a fair price in sound funds, which have doubtless been properly applied to the legitimate purposes of the estate, or have gone into the hands of the heirs and distributees of the deceased; and all those who were of sufficient age and capacity have consented to the sale by a long acquiescence, and it does not appear that justice can be done to all the parties by a re-sale.

An administrator *de bonis non* has such an interest in the estate of a decedent, whom he represents, as to authorize him to make an application in the court of probate to set aside a void sale of the lands of the deceased, made by order of said court.

For the error above pointed out, the judgment of the court below is reversed, and the cause remanded, and the court below is directed to dismiss the appellee's petition in that court. And the appellee will pay the costs of this appeal in this court and in the court below.